NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220158-U

NO. 4-22-0158

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 26, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ANTONIO MARTELL RAMBERT, | ) | No. 21CF131 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin W. Lyons, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court found the plain-error doctrine applicable and accepted the
State's concession that the trial court's failure to conduct an inquiry into defense
counsel's tender of a lesser-included-offense instruction as described in *People v.
Medina*, 221 Ill. 2d 394 (2006), constituted second-prong plain error, when the
record showed defendant's concern about the effect of the instruction and
defendant was convicted of the lesser-included offense.

¶ 2    Defendant, Antonio Martell Rambert, was charged in part with armed violence

(count I) (720 ILCS 5/33A-2(a) (West 2020)), alleging he committed the offense of unlawful

possession with intent to deliver a controlled substance while armed with a handgun. He was also

charged with unlawful possession with intent to deliver a controlled substance (count II) (720

ILCS 570/401(d)(1) (West 2020)). A jury ultimately convicted him of the lesser-included offense

of unlawful possession of a controlled substance (*id.* § 402) and armed violence predicated on

that lesser-included offense (720 ILCS 5/33A-2(a) (West 2020)). The court merged the convictions and sentenced defendant on the armed violence charge.

¶ 3        Defendant appeals, arguing the trial court erred when it gave the jury a lesser-included-offense instruction without conducting an inquiry into whether defendant had been advised of the potential penalties and whether he agreed to the tender of the instruction. To the extent defendant forfeited the matter, he argues plain error applies. We reverse and remand for a new trial.

¶ 4                                    I. BACKGROUND

¶ 5        On March 3, 2021, the State charged defendant in part with unlawful possession of a controlled substance with intent to deliver and armed violence, predicated on defendant's commission of the drug offense while armed with a handgun. At the bond hearing, the trial court mistakenly informed defendant the armed violence charge had a sentencing range of 6 to 30 years' incarceration when the actual sentencing minimum was 15 years because of the type of weapon. *Id.* § 33A-3(a). The court also informed defendant that, because he had previous convictions, he was subject to non-probational Class X sentencing for unlawful possession of a controlled substance with intent to deliver. On March 16, 2021, defendant was indicted on the same charges. The record indicates defendant rejected a plea agreement in favor of proceeding to a jury trial.

¶ 6        On January 12, 2022, the trial court conducted a jury trial. When the court read the charges to defendant, it again mistakenly stated the penalty for the armed violence charge was 6 to 30 years' incarceration. The State corrected the court, stating the range was 15 to 30 years. After jury selection, the following colloquy occurred:

> "[DEFENDANT]: I just wanted to ask a question.

THE COURT: Yeah.

[DEFENDANT]: Yeah, I'm confused about something.

THE COURT: Okay.

[DEFENDANT]: I just wanted to know could you please explain to me how does the sentence range 15 to 30 now?

THE COURT: Uh-huh. It's just for that offense, right?

[STATE'S ATTORNEY]: It's just for Count 1.

[DEFENSE COUNSEL]: Just Count 1.

THE COURT: For example, most weapons cases that were usually Class 3s, the legislature has left them as Class 3s, but they said this crime is a different sentence. So this is one of those. And so this Class X, which would normally be six to 30, the legislature at some point has plucked it out of the normal Class Xs and given it a floor of 15 because it involves a weapon, I think.

[DEFENSE COUNSEL]: Category 1.

[STATES ATTORNEY]: It's a Category 1 weapon, yeah.

THE COURT: A certain level of weapon. If you've been here on occasion before, sometimes a person will have a weapons case, and even though it normally would be probationable, it's two to 14—-er, two to ten. And then there are others that it's seven to 14, but it can drop to three if certain conditions are found. It's very complicated, so I don't blame your question. But that's why, because it's been plucked out of that lineup and given its own sentence, its own range. And it's the day-for-day rate."

¶ 7    Evidence at trial included testimony that officers conducting surveillance at a residence saw defendant arrive at the residence with another person, stay for about 10 to 15 minutes, and leave carrying a red sweatshirt. It appeared defendant was trying to hide something. Officers stopped defendant's vehicle and removed defendant and his passenger. One of the officers saw the muzzle of a firearm in the backseat under a red sweatshirt and another firearm on the floorboard. Officers searched defendant and found a clear plastic bag containing other smaller plastic bags of a substance that was later revealed to be crack cocaine. The State played recordings of phone calls made by defendant in which he admitted having the drugs and indicated he could not avoid being convicted of unlawful possession of them.

¶ 8    Defense counsel moved for a directed verdict, arguing nothing linked the firearms to defendant. Counsel also argued the State failed to prove defendant intended to deliver the drugs to anyone. The court asked counsel, "are you going to have the lesser-included? Well, I mean, maybe you want, you know, you want to ring the bill [*sic*] and all or nothing, because that's a good strategy too." Counsel replied, "I have not discussed that at this point because the evidence, we didn't know what the evidence would be."

¶ 9    The trial court denied defendant's motion for a directed verdict, and the following colloquy then occurred:

"[DEFENSE COUNSEL]: Your Honor, just to—in talking to my client, explaining—

THE COURT: Mm-hmm.

[DEFENSE COUNSEL]:—what a lesser-included is and how—

THE COURT: Uh-huh.

[DEFENSE COUNSEL]:—that would be charged, we would want a lesser-included in that for the—

[STATES'S ATTONEY]: I mean, that's—I understand and I don't disagree that he's entitled to it.

THE COURT: Mm-hmm.

[STATE'S ATTONEY]: I will have to redo a lot of instructions then.

THE COURT: Does that have to be mentioned and included in the ones you have, or can we just make it a lesser-included?

[STATE'S ATTORNEY]: No, because we have to change the—we'd have to at least modify the concluding instruction.

THE COURT: Uh-huh.

[STATE'S ATTONEY]: We'd have to add—

THE COURT: To have three verdicts.

[STATE'S ATTORNEY]: Yeah, to have three verdict forms.

THE COURT: Well—

[STATE'S ATTORNEY]: And Judge,—"

The record shows the jury then entered the courtroom and defense counsel stated "[w]e can continue that." The court replied, "Okay. We weren't expecting them."

¶ 10          The defense rested, and the parties and the court discussed the jury instructions outside of the jury's presence. The parties discussed at length the inclusion of a lesser-included-offense instruction concerning the charge of possession of a controlled substance with intent to deliver to allow the jury to find defendant guilty of solely possession. They further discussed the "three choices" and three verdict forms of guilty, not guilty, and guilty of the

- 5 -

lesser-included offense. When discussing the armed violence charge, the parties discussed the possibility of modifying the armed violence instruction to state it could be proven if defendant committed either act of unlawful possession with intent to deliver or simple possession. The court took a recess to allow modified instructions to be drafted.

¶ 11    Proceedings later resumed without the jury present. Defendant was also not initially present and entered the courtroom as indicated at the end of the following colloquy:

"[THE COURT]: Now, what about this one? Where it says, 'A person commits armed violence when he commits the offense of unlawful possession with intent to deliver a controlled substance,' I thought we were going to put in there 'or unlawful possession of a controlled substance.'

[STATE'S ATTORNEY]: Didn't I have that?

[DEFENSE COUNSEL]: Yeah.

THE COURT: No.

　　　***

THE COURT: But then here——

[STATE'S ATTORNEY]: I think, yeah, that's them.

THE COURT: Okay. Oh, I gotcha. Okay. The one where it says, 'A person commits armed violence'—oh, let's bring [defendant] in. The second paragraph, 'A person is consider,' it's supposed to be 'considered.' I'm going to just write E-D in there.

[STATE'S ATTORNEY]: Oh, yeah.

(Defendant entered the courtroom.)

THE COURT: Okay. On the issues of armed violence, 'To sustain the charge of armed violence, the State must prove the following propositions,' we just added, parentheses, 'or possession of,' right?

[STATE'S ATTORNEY]: Yes"

Verdict forms were added to allow the jury to find (1) defendant guilty of armed violence based on either possession of a controlled substance with intent to deliver or possession of a controlled substance, (2) not guilty of armed violence, (3) guilty of unlawful possession with intent to deliver, (4) guilty of possession of a controlled substance, and (5) not guilty of either drug charge. The court did not inquire whether defense counsel had advised defendant of the potential penalties or ascertain whether defendant agreed with the tender of the lesser-included-offense instruction.

¶ 12        Approximately 30 minutes after starting deliberations, the jury sent a note asking "[c]an we find [defendant] guilty of armed violence without the intent to distribute?" The court returned a note to the jury stating defendant could be convicted of armed violence by using either unlawful possession with intent to deliver a controlled substance or possession of a controlled substance. Approximately 30 minutes later, the jury returned verdicts of guilty of armed violence and possession of a controlled substance.

¶ 13        Defendant filed a motion for judgment of acquittal notwithstanding the verdict or for a new trial. The motion included an allegation the trial court denied defendant due process, but no specifics were given, and the motion did not specifically raise issues concerning the lesser-included-offense instruction. The trial court denied the motion.

¶ 14        At sentencing, the court asked defendant if he wished to say anything on his behalf. The following colloquy then occurred:

"[DEFENDANT]: Yes. I wanted to say that I was not given a notice to the punishment guidelines enhancement. I feel that if I would have been informed before, any time before my trial, that I would have pushed—I probably would have never pushed for a jury trial if I was properly noticed about the punishment guideline.

Another thing I wanted to say was under the statute of 720 ILCS 5/33A-2 those are the elements of armed violence, and I just wanted to know which section is the State using to enhance my mandatory minimum.

THE COURT: I don't believe there is a mandatory minimum. I don't believe it's by enhancement. I believe it's by statutory operation.

[DEFENDANT]: Can you tell me which section that they're using? Which elements did I get found guilty on under the armed violence statute?

[DEFENSE COUNSEL]: Same one I showed you yesterday at the jail.

THE COURT: 33A-2(a).

[DEFENDANT]: This says basically possession so you could—person commits armed violence when while armed with dangerous weapon.

THE COURT: I'm almost sure we went through this at the trial.

[DEFENDANT]: It's just something that I still don't understand. I just wanted to make clear on the record. I just, I don't understand how—you know, how can a possession of a weapon with just another simple possession be armed violence. That's just a case—if you were to substitute the drugs and put a crack pipe in the equation, would it still be armed violence?"

After addressing hypothetical situations raised by defendant, the discussion continued:

"[DEFENDANT]: I just really didn't understand. I was caught totally one hundred percent off guard at trial about this sentence.

THE COURT: No, you weren't.

[DEFENDANT]: Yes, I was.

[DEFENSE COUNSEL]: For the record, Judge, when I first met [defendant] and went over the armed violence, the very first thing I do on any armed violence case is explain it's a 15-year minimum. It was very well provided to him.

[DEFENDANT]: It's not true.

THE COURT: My recollection, [defendant], I wasn't trying to push anybody, but I was trying to make every effort if there was an opportunity to resolve this without being your advocate or negotiator that I was certainly wanting to do that or willing to do that, but it was—I'm just going to go from my memory. That it was telegraphed quite well from you that you wanted a trial. By God we were gonna have a trial.

[DEFENDANT]: If you remember, I asked you during trial how did—

THE COURT: During trial.

[DEFENDANT]: I asked you—

THE COURT: During trial.

[DEFENDANT]: I was totally caught off guard.

THE COURT: No. Saying it doesn't make it true. It really is not my impression.

[DEFENDANT]: That's your opinion.

THE COURT: The facts certainly don't support that. What the facts do support were that you demanded a trial. I was interested in giving you a trial, but I was also interested in giving you the opportunity, or, making sure you understood the opportunity of lessening what could be a potential impact on you. But here we are. It is what it is.

Not only did we go over this several times, we also—it occurred I think even during the trial where it was, it was if the, if the evidence unfolded and there was a, it appeared clear or probative that there was a possession of controlled substance and that if the jury found that you were in possession, constructively or actually, of a weapon would that constitute this crime? The answer was yes."

The court told defendant it did not know if defendant was "just wanting to roll the dice or what," and it explained various strategies whereby a defendant might wish a jury trial with a lesser-included-offense instruction. The court also further explained armed violence was the same conviction whether defendant possessed a controlled substance with intent to deliver or simply possessed the substance. Defendant replied, "I never understood nothing throughout this time I've been sittin' here." Defendant then asked several questions as to why a handgun qualified as a weapon elevating the minimum sentence to 15 years and if any armed violence charge would have a 6-year minimum, ultimately asking the court, "So, no armed violence is 6 to 30?" The court told defendant that, under his circumstances, "yes."

¶ 15        The court merged the conviction of unlawful possession of a controlled substance with the conviction of armed violence and sentenced defendant to 16 years' incarceration. This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    Defendant argues he was deprived of a fair trial when the trial court gave the lesser-included-offense instruction without conducting an inquiry into whether defendant had been advised of the potential penalties and determining whether he agreed to the tender of the instruction.

¶ 18    Defendant states, without any substantive analysis, that he raised the issue in his posttrial motion when he alleged a denial of due process. We note the motion was devoid of a specific argument concerning how the trial court denied defendant of due process. In any event, defendant further argues that if the issue was forfeited, plain error applies.

¶ 19    We agree defendant forfeited the issue by failing to raise it at trial or in his posttrial motion, but we may address it under the plain-error doctrine because it impacts his substantial rights. See *People v. Curtis*, 354 Ill. App. 3d 312, 328 (2004). A reviewing court may consider a forfeited issue under the plain-error doctrine when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)) The first step in plain-error review is to determine whether an error occurred at all. *Id.*; see also *People v. Hudson*, 228 Ill. 2d 181, 191 (2008).

¶ 20    The State initially argues defendant fortified the issue but then agrees that, if plain error is applied, "this [c]ourt may find that error occurred and defendant's argument under the second-prong of the plain-error doctrine is appropriate in this context." The State further agrees the trial court failed to follow procedure mandated by case law and does not argue second-prong

plain error would be inapplicable. We interpret this as a concession of the issue and, for the

reasons stated below, we accept the concession.

¶ 21　　　　In *People v. Brocksmith*, 162 Ill. 2d 224, 227-28 (1994), our supreme court held

the decision to submit a lesser-included-offense instruction is one of five decisions belonging

exclusively to a criminal defendant, as opposed to defense counsel. In so holding, the court

recognized the decision to tender a lesser-included-offense instruction is analogous to the

decision to plead guilty. *Id.* at 228. It reasoned, "[b]ecause it is defendant's decision whether to

initially plead guilty to a lesser charge, it should also be defendant's decision to submit an

instruction on a lesser charge at the conclusion of the evidence. In both instances the decisions

directly relate to the potential loss of liberty on an initially uncharged offense." *Id.* at 229.

¶ 22　　　　In *People v. Medina*, 221 Ill. 2d 394, 408 (2006), the supreme court again made

clear "the decision to tender a lesser-included offense instruction is 'analogous to the decision of

what plea to enter.' " (quoting *Brocksmith*, 162 Ill. 2d at 229). The court further provided a

procedural framework to ensure a criminal defendant understands the risks associated with

tendering a lesser-included-offense instruction. The *Medina* court recognized that, when a

lesser-included-offense instruction is tendered by the defense, the defendant is exposed to

potential criminal liability which otherwise might be avoided and is in essence stipulating that

the evidence is such that a jury could rationally convict the defendant of the lesser-included

offense. *Id.* Consequently, the court concluded that, when defense counsel tenders a

lesser-included-offense instruction, "the trial court should conduct an inquiry of defense counsel,

in defendant's presence, to determine whether counsel has advised defendant of the potential

penalties associated with the lesser-included offense, and the court should thereafter ask

defendant whether he agrees with the tender." *Id.* at 409.

¶ 23 Here, the parties agree the trial court did not follow the procedure set forth in *Medina*. While there was some discussion of the instruction and the penalties conducted in defendant's presence, defendant was absent from some of the discussions, the trial court initially wrongly informed him of the penalties, and the trial court did not ascertain whether defendant was advised of the potential penalties or agreed with tendering the lesser-included-offense instruction. Indeed, the record indicates defendant was unaware of the effect of the instruction, as his confusion about the matter was apparent in his comments to the court both before trial and at sentencing.

¶ 24 As to plain error, defendant argues second-prong plain error applies in that a clear trial error occurred that challenged the integrity of the judicial process, regardless of the closeness of the evidence. The State agrees.

¶ 25 We note our supreme court has equated second-prong plain error to structural error, requiring reversal of systematic errors which serve to erode the integrity of the judicial process and undermine the fairness of the defendant's trial. See *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010) (citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). There is a lack of precedent as to whether failing to conduct an inquiry as required by *Medina* is the type of error to support reversal under the second prong of the plain-error doctrine. However, the *Medina* court found the decision to tender a lesser-included-offense instruction analogous to the decision of what plea to enter. *Medina*, 221 Ill. 2d at 408. In *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 30-32, the First District recognized the "magnitude" of the error under *Medina* but found second-prong plain error did not apply when the defendant did not indicate disagreement with the lesser-included-offense instruction and was not convicted of the lesser-included offense.

¶ 26　　　　　　Here, the circumstances in *Burton* do not apply, and the seriousness of the error is apparent. Absent the lesser-included-offense instruction, the evidence would have been insufficient to convict defendant of armed violence when the jury acquitted him of unlawful possession of a controlled substance with intent to deliver. Indeed, the jury's note during deliberations further illustrates their belief defendant was not guilty beyond a reasonable doubt of possession of a controlled substance with the intent to deliver. Thus, the lesser-included-offense instruction directly led to defendant's conviction of simple possession of a controlled substance and armed violence predicated on that offense. Thus, given the seriousness of the error as stated in *Medina* and the lack of precedent to hold that second-prong plain error would not apply, we accept the State's concession and reverse and remand for a new trial.

¶ 27　　　　　　　　　　　　　　　III. CONCLUSION

¶ 28　　　　　　For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.

¶ 29　　　　　　Reversed and remanded.